UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| MICHAEL CARMIE ANTONELLI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 07-219-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| SUSAN WALTERS, ET AL., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Michael Carmie Antonelli is incarcerated in the Memphis Federal

Correctional Institution located in Memphis, Tennessee. Antonelli filed this *pro se* civil

action on October 26, 2007. [Record No. 2]. Antonelli asserted claims under: (1) the Federal

Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680 and (2) 28 U.S.C. § 1331,

pursuant to the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403

U.S. 388 (1971).[1] Antonelli complained about the conditions of confinement he experienced

---

[1]

The named defendants are: (1) Susan Walters; (2) Melissa Parr; (3) Susan Hastings;
(4) Ms. Smith, Associate Warden; (5) Brian Patton, Acting Warden; (6) Hector Rios,
Warden; (7) Dr. Arnold, Dentist;  (8) Joe Bainer, Food Service Administrator; (9) Ms.
Hamilton, Correctional Officer; (10)  Mr. Grindstaff, Associate Warden; (11) Mr. Terrell,
Safety Manager; (12) Mr. Batts, Associate Warden; (13) Mr. Gourdouze, Captain; (14) Mr.
Ranum, Consolidated Services Manager; (15) Vince Arisman, Trust Fund Supervisor; (16)
Mr. Harper, Inmate Systems Manager; (17)  Paul Patterson, Supervisor of Recreation; (18)
Dr. King, Chief Psychologist ; (19) J. Link, Security Investigations Administrator; (20) Mr.
Fazenbaker, Unit Manager; (21) Vern Morgan, Factory Manager, Unicor Federal Prison
Industries; (22) Brian Salyers, Correctional Counselor; (23) Darrell Leg., Case Manager
Coordinator; (24) S. Slone, Assistant Health Services Administrator; (25) Steve Parr,
Facilities Manager; (26) Valene Jordan, Vocational Training Instructor; (27)  Mr. Newsom,

while previously incarcerated in the United States Penitentiary-Big Sandy ("USP-Big Sandy").[2]  All of the individually named defendants are federal officials, specifically, employees of USP-Big Sandy.  Antonelli seeks $1,000,000.00 in damages from the defendants.  He also seeks injunctive relief in the form of an Order preventing the defendants from continuing the actions described in his Complaint.

The Court currently considers the following pleadings:

(1)     The "Motion to Dismiss" [Record No. 54] filed by counsel for the federal Defendants, as well as Antonelli's response; and

(2)     The "Affidavit with Proof of Exhaustion" [Record No. 65] filed by Antonelli, which concerned whether he had administratively exhausted his numerous claims.

## I.

Federal Rule of Civil Procedure 12 provides that prior to responding to a Complaint, a Defendant may bring a Motion to Dismiss on certain grounds which are listed in the Rule. Subsection (b)(6) permits a Motion to Dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In reviewing a Rule 12(b)(6) Motion, the High Court has directed that well pled allegations must be taken as true and must be construed most favorably toward the non-movant.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A

---

Correctional Officer; (28) the Federal Bureau of Prisons ('the BOP"), (29) the United States Parole Commission ("the USPC"), and; (30) the United States of America.

[2]

USP-Big Sandy is located in Inez, Kentucky Antonelli has been transferred to two different federal prisons since October 26, 2007.

complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is not law to support the claims, if the alleged facts are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6ᵗʰ Cir. 1978)); *Westlake v. Lucas*, 537 F.2d 857 (6ᵗʰ Cir. 1976).  *See also Gazette v. City of Pontiac*, 41 F.3d 1061 (6ᵗʰ Cir. 1994) (affirming dismissal of a § 1983 complaint).

The defendants also submit their motion as one seeking summary judgment. Summary judgment should be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2007).  The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the non-movant.[3]  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir. 1997), *cert. denied,* 522 U.S. 967 (1997).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).  The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or

---

[3]The Court notes that all facts discussed in this Opinion and Order have been construed and viewed in the light most favorable to Antonelli.

whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

The moving party has the burden of showing that there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25. A district court is required to examine a motion for summary judgment to ensure that a moving party has discharged his burden. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). After the moving party carries its burden, the non-moving party must go beyond the pleadings to designate, by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324-25. With these considerations in mind, the Court will address the parties' submissions. The Court will address Eighth Amendment medical claims in Section A; conditions of confinement claims in Section B; FTCA claims in Section C; injunctive relief claims in Section D, and bad faith issues in Section E.[4]

## II.

### A.

#### 1.

Antonelli asserted nine claims alleging that prison officials were deliberately indifferent to his serious medical needs. "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict

---

[4]

As the Court has attempted to group similar claims together, the claims are not addressed in the same order as set forth in the Complaint.

pain, they impose cruel and unusual punishment in violation of the Eighth Amendment."
*Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citing
*Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976)).  The test to
determine whether prison officials have acted with "deliberate indifference" has both an
objective and a subjective component.  *See Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir.
2000).  The objective component requires an inmate to show that the alleged deprivation is
"'sufficiently serious'" and that he is "'incarcerated under conditions posing a substantial risk
of serious harm.'" *Id.* at 867 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct.
1970, 128 L. Ed.2d 811 (1994)).  To satisfy the subjective component, an inmate must show
that prison officials had "'a sufficiently culpable state of mind.'"  *Id*. (quoting *Farmer*, 511
U.S. at 834).  This standard is satisfied if "the official knows of and disregards an excessive
risk to inmate health or safety."  *Id*.  Furthermore, "'[w]here a prisoner has received some
medical attention and the dispute is over the adequacy of the treatment, federal courts are
generally reluctant to second guess medical judgments and to constitutionalize claims that
sound in state tort law.'"  *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358
F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860, n. 5 (6th Cir.
1976)).

**2.**

**a.**

In Count 1 of his Complaint, Antonelli alleges that Dr. Arnold, DDS, Warden
Hastings, Associate Warden Smith, Warden Patton, and Former Warden Rios delayed or

denied his request for dentures.  Antonelli  filed administrative tort claims,

TRT-MXR-2007-00953 and TRT-MXR- 2007-06211, on this matter.[5]  He was advised that

USP-Big Sandy had added him to the list of inmates requesting dentures.  He was further

advised, however, that there were several inmates ahead of him on the list.  Basically,

Antonelli's dental condition was not deemed to be an emergency compared to the dental

concerns of other inmates at USP-Big Sandy, and Antonelli was transferred from USP-Big

Sandy before he could be assessed for dentures.  In his response to the defendant's motion to

dismiss, Antonelli claimed that he was denied dentures for one year and that the denial

caused his health to deteriorate [Record No. 61, p. 2].  This claim lacks merit for several

reasons.

First, as noted, when a plaintiff alleges deliberate indifference to his serious medical

needs, but the case involves a difference of opinion between the plaintiff and a doctor

regarding the plaintiff's diagnosis and treatment, no claim is stated.  *Estelle v. Gamble*, 429

U.S. at 107; *Westlake v. Lucas*, 537 F.2d at 860 n. 5.  Even if mistakes in diagnosis and

treatment are made, "[m]edical malpractice does not become a constitutional violation merely

because the victim is a prisoner."  *Estelle*, 429 U.S. at 106.  *See also Jackson v. Hill*, 2006

WL 1139739, at *5 (W.D. Mich. 2006) (unpublished) ("'[F]ederal courts are generally

reluctant to second guess medical judgments and to constitutionalize claims which sound in

state tort law.'" (quoting *Westlake v. Lucas*, 537 F.2d at 860 n. 5)); *Ryan v. Aina*, 222 Fed.

---

[5]Antonelli filed administrative tort claims related to most of his complaints.
Hereinafter, the administrative tort claim number, where relevant, will be listed
parenthetically after his claim is described.

Appx. 801, 2006 WL 3825188 (11th Cir. 2006) (unpublished).  Here, Antonelli has essentially alleged only a difference of opinion regarding whether he needed immediate treatment.

Second, Antonelli has not produced any medical evidence which would support his broad claim that Dr. Arnold's decision regarding dentures caused him physical damage.  In order to show a constitutional violation based on an alleged delay in treatment, the prisoner must place verifying medical evidence in the record establishing the detrimental effect of the delay.  *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (affirming grant of summary judgment to the defendants).  Antonelli has not made this showing.

Third, no liability can be imposed against the prison officials named in this Count. They are prison administrators, not medical providers, and the only basis on which Antonelli asserts claims against them is that of *respondeat superior*.  This is not a basis of liability in a *Bivens* action.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *Kesterson v. Luttrell*, 172 F.3d 48 (Table), 1998 WL 894843 (6th Cir. 1998); *Jones v. City of Memphis*, 586 F.2d 622, 625 (6th Cir. 1978).  Rather, a plaintiff must allege that the supervisor condoned, encouraged or participated in the alleged misconduct.  *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241 (6th Cir. 1989), *cert. denied*, 110 S. Ct. 2173 (1990).  Antonelli, however, has not alleged that these defendants participated in the making of medical decisions about him.  He claims only that the former wardens denied him administrative remedies related to his request for dentures.

Other cases in which prisoners have alleged the denial of dental treatment support the Court's determination that Antonelli has not asserted an Eighth Amendment claim on this

issue.  *See Davis v. Powell*, 110 Fed. Appx. 660, 2004 WL 2203568 (6th Cir. September 17,

2004) (State prison officials were not deliberately indifferent to inmate's dental needs, and

thus their refusal to issue replacement set of partial dentures did not violate Eighth

Amendment despite inmate's contentions that his gums were sore and bleeding, that he was

not able to chew, and that he had headaches, where prison dentists examined and treated

inmate at least six times, observed no evidence of pain or bleeding, and determined that

inmate was not in need of emergency partial dentures); *Plovie v. Jackson*,  2005 WL

2405952, at *9 (W.D. Mich. September 29, 2005) (Not Reported in F. Supp. 2d) ("In this

case, Plaintiff received dental care, including the extraction of problem teeth, and the

manufacture of dentures.  Plaintiff's claim relates to various delays in receiving the treatment,

as well as to the quality of the treatment rendered.  However, such claims do not rise to the

level of an Eighth Amendment violation.").  Accordingly, Antonelli's claim will be

dismissed.

### b.

In Count 22, Antonelli alleges that Warden Hastings and Associate Warden Smith

failed to have proper emergency medical care for inmates, resulting in the death of inmate

Calvin Speight.  *See United States v. Terrell Johnson*, Case No. 07-CR-00018-GFVT.

The defendants correctly assert that Antonelli has no standing to bring an action on behalf of

the estate of Calvin Speight.  The Fourth Circuit has held that incarcerated, pro se litigants

are inappropriate representatives of the interests of others.  *See Oxendine v. Williams*, 509

F.2d 1405, 1407 (4th Cir. 1975).  *See also Sule v. Story*, 1996 WL 170156, at * 1 (10th Cir.

Apr. 11, 1996) (unpublished)(collecting cases).  In numerous unpublished decisions, the
Sixth Circuit has followed the Fourth Circuit's decision in *Oxendine*.[6]  Antonelli is an
incarcerated *pro se* litigant.  Because Antonelli is not an appropriate representative of a class
or group of inmates, this claim will be dismissed.

**c.**

In Count 25, Antonelli challenges the Bureau of Prisons' ("BOP") implementation of
the Federal Health Care Copayment Act of 2000, codified at 18 U.S.C. §§ 4013(d), 4048, and
28 C.F.R. § 549.72, which requires prisoners to pay a $2.00 co-payment for certain medical
services.  Specifically, Antonelli alleges that as an "old-law" inmate he is not subject to the
medical co-pay statute, and he asserts a claim on that issue against Associate Warden Smith.
(TRT-MXR-2007-04175 and TRT-MXR-2007-06211.)  In response to his administrative tort
claims, Antonelli was advised that he is subject to the co-pay statute.

Antonelli has failed to state a claim on this issue.  Antonelli fails to cite any case law
which exempts "old law" inmates from 18 U.S.C. §§ 4013(d), 4048, and 28 C.F.R. § 549.72.
Antonelli also fails to allege specific incidents where he was improperly charged the co-pay.
Further, a similar challenge was examined in *Baker v. Gonzalez*, 2007 WL 141050 (E.D. Ky.
Jan. 17, 2007), *rev'd on other grounds*, *Baker v. Mukasey*, 2008 WL 2622659 (6th Cir. July

---

[6]

   *See Howard v. Dougan*, 2000 WL 876770, at *1 (6th Cir. June 23, 2000); *Ballard v.
Campbell*, 1999 WL 777435, at *1 (6th Cir. Sept. 21, 1999); *Giorgio v. Tennessee*, 1996 WL 447656,
at *1 (6th Cir. Aug.7, 1996);  *Marr v. Michigan*, 1996 WL 205582, at * 1 (6th Cir. Apr. 25, 1996);
*Barnes v. Dunn*, 1991 WL 243553, at *1 (6th Cir. Nov. 21, 1991); *Stanko v. Story*, 1991 WL 73257
(6th Cir. May 7, 1991).

9

01, 2008).  In *Baker*, the Court held that it was in agreement with the numerous courts that have upheld the application of similar health care co-payment systems to inmates against challenges on procedural due process grounds.  Accordingly, this claim will be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

### d.

In Count 35, Antonelli alleges that federal defendant Sherry Slone, Health Services Administrator, failed to treat his Rosacea.  Rosacea is a skin condition characterized by inflamed, red, oily, acne-prone areas.  (TRT-MXR-2007-04185.)  In response to his administrative tort claim, the BOP noted that Antonelli had been examined by medical staff on November 22, 2006, and December 20, 2006, but he did not present any issues concerning Rosacea on those dates.

Antonelli has no Eighth Amendment claim concerning his Rosacea skin condition.  Again, though he claims that the denial of Rosacea medicine was "inhumane" and that he was physically damaged thereby [Record No. 61, p.8], he did not provide the Court with any medical evidence supporting this conclusory and broad allegation.  *See Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).  But even absent such medical verification, the claim is lacking because Antonelli has not alleged facts that meet the objective ("serious medical need") and subjective ("deliberate indifference") prongs of the test for an Eighth Amendment medical violation.  First, while the condition may cause chronic cosmetic side effects, the Court cannot conclude that Rosacea constitutes a **serious** medical condition or **serious** medical need.  Second, Antonelli has not demonstrated that Defendant Slone had the

requisite state of mind. *See Wilson*, 501 U.S. at 299. Antonelli must establish "deliberate indifference" on the part of the prison official. The Supreme Court has held that conduct constituting "deliberate indifference" is "obduracy and wantonness, not inadvertence or error in good faith . . . ." *Wilson*, 501 U.S. at 299 (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). Thus, the "offending conduct must be wanton." *Id*. Antonelli has not alleged facts amounting to "wanton" conduct on the part of Defendant Slone. His claim will therefore be dismissed.

### e.

In Count 36, Antonelli alleges that federal defendant Sherry Slone, Health Services Administrator, failed to treat his high blood pressure. (TRT-MXR-2007-04182.) The BOP responded to Antonelli's administrative tort claim by explaining that Antonelli had been seen by a Physician's Assistant on November 22, 2006, for blood pressure concerns. Antonelli was seen again on December 20, 2006, by a Physician's Assistant who noted that his blood pressure was within normal limits.

Simply put, Antonelli has again asserted broad, conclusory allegations. He has failed to demonstrate that he even suffers from high blood pressure. He has also failed to demonstrate that the defendant's alleged omissions caused him any physical harm. *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). Accordingly, on this issue, he fails the relevant two-part Eighth Amendment analysis outlined previously. The claim will be dismissed.

11

**f.**

In Count 37, Antonelli alleges that federal defendant Sherry Slone, Health Services Administrator, failed to provide him with his annual physical in a timely manner. Antonelli has asserted broad and conclusory allegations on this issue, but he has failed to set forth any medical opinion that an " untimely physical" has caused any detriment to his health or physical condition. *See Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). No issue of fact exists on this claim, and it will be dismissed.

**g.**

In Count 61, Antonelli alleges that he was denied corrective eyeglasses from February 1, 2007, to June 7, 2007, by Defendant Warden Rios. (TRT-MXR-2007-06211 and 2008-TRT-00282.) In response to his administrative tort claims on this issue, Antonelli was advised that he had been added to the Optometrist list at USP-Big Sandy. He was further advised that he would be scheduled for an appointment when his name reached the top of the list. Antonelli was transferred to FCI-Manchester before he could be seen. He was advised to get his name on the FCI-Manchester list.

Antonelli has failed to establish that he required eyeglasses during the relevant time period. *See Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). He has also failed to so show how the Warden Rios was deliberately indifferent to his serious medical needs. Further, a warden does not render medical care, and, pursuant to *Monell*, Warden Rios cannot be held liable for medical actions under a theory of *respondeat superior*. While former Warden Rios may have denied Antonelli's grievances on this issue, such adverse

12

decisions do not render him liable under the Eighth Amendment for a medical claim. Accordingly, Count 61 must be dismissed.

**h.**

In Count 49, Antonelli alleges that he was denied general medical care by Warden Hastings and Warden Rios.  Antonelli has asserted only vague and conclusory allegations on this issue, both in his Complaint and in his response to the defendants' motion to dismiss. His conclusory assertions, while sufficient for a complaint, do not survive the higher standard of a motion to dismiss or a motion for summary judgment as explained by *Celotex* and other related cases.  His unsubstantiated claim is insufficient to raise a genuine issue of material fact under Fed. R. Civ. P. 56.  *See Scheid v. Fanny Farmer Candy Shops, Inc.* 859 F.2d 434, 437 (6th Cir. 1988); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994)(citing *Ana Leon T. v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 930 (6th Cir. 1987), *cert. denied*, 484 U.S. 945 (1987)).  Accordingly, Count 49 will be dismissed.

**i.**

In Count 57, Antonelli alleges that Defendant Warden Rios did not provide him with a "soft-shoe" permit.  (TRT-MXR-2007-04186.)  In response to his administrative tort claim, he was advised that the Medical Department's Utilization Review Committee reviewed Antonelli's request for a soft shoe permit on April 2, 2007.  The Committee rejected the request for medical shoes or soft shoes and instructed Antonelli to purchase heel cups from the commissary.

Antonelli has asserted broad and conclusory claims on this issue, and he has failed to

13

set forth any medical opinion that the denial of a soft-shoe permit caused any detriment to his health or physical condition. *See Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). Again, Antonelli is reminded that disputes over the course of medical treatment are generally not a basis for Eighth Amendment claims. "'[F]ederal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Jackson v. Hill*, 2006 WL 1139739, at *5 (quoting *Westlake v. Lucas*, 537 F2d 857, 860 n.5 (6th Cir. 1976)); *Ryan v. Aina*, 222 Fed. Appx. 801, 2006 WL 3825188 (11th Cir. 2006). No issue of fact exists on this issue, and the claim will be dismissed.

## B.

### 1.

Antonelli has asserted over fifty claims in which he complains about numerous conditions of his confinement at USP-Big Sandy. The majority of Antonelli's claims challenge prison conditions imposed while he was confined in lock-down. The Supreme Court has ruled that in order for any condition of confinement to amount to an Eighth Amendment violation, it must impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Ruiz-Garica v. Stine*, 2008 WL 217121, at *2 (E.D. Ky. Jan. 28, 2008) (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). Moreover, a plaintiff must demonstrate the existence of a severe deprivation, such as the denial of essential food, medical care, or sanitation, or other conditions intolerable for prison confinement. *Neal v. Miller*, 778 F. Supp. 378, 382-83 (D. Mich. 1991) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981)). The Sixth Circuit has held that without a showing

14

that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Bradley v. Evans*, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000); *Collmar v. Wilkinson*, 1999 WL 623708, *3 (6th Cir. Aug. 11, 1999). For the reasons set forth below, the Court determines that none of the complaints lodged by Antonelli regarding the conditions of his confinement amounted to Eighth Amendment violations.

## 2.

### a.

In Count 2, Antonelli alleges that Warden Hastings and Food Service Administrator Bainer fed him bologna and cheese sandwiches and potato chips during institutional lock-downs which occurred from October 24, 2006, through December 5, 2006. Antonelli also alleges that he only had water to drink with these meals. (TRT-MXR-2007-01233.) In response to his administrative tort claim, he was advised that during lock-downs the CEO may approve an alternative meal. When a snack meal is provided as an alternative menu service, the minimum contents will be one non-pork meat sandwich, one no flesh sandwich (cheese), one portion of fruit and one beverage. During the lock-downs inmates were provided additional foods including boiled eggs, doughnuts, dry cereal, bagels, peanut butter, jelly, snack cakes, fruit pies, fresh celery, fresh carrots, tuna fish, and a variety of fruit juices per BOP Program Statement 4700.05.

In his response to the motion to dismiss, Antonelli claims that he suffered "physically" because the bologna was rancid and because it was nutritionally deficient [Record No. 61, p.

15

2].  However, Antonelli did not present the Court with any medical documentation to substantiate his claim that bologna and potato chips detrimentally affected his health or "harmed" him.  *See Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). Antonelli has simply argued that he sustained bodily harm.  A plaintiff has a higher burden to meet after a defendant files a motion for summary judgment.  *See Mack v. Wilkinson*, 79 Fed. Appx. 137, 2003 WL 22435663 (6th Cir. 2003) (affirming summary judgment to Defendants. Prisoner's allegation that he was in "a great deal of pain," with no expert testimony as to the detrimental effect of going ten days without his several medications did not rise to the level of an Eighth Amendment claim).

The Sixth Circuit has recognized that the Eighth Amendment requires prison officials to provide inmates with a diet that is nutritionally adequate for the maintenance of normal health.  *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977).  Food served to inmates, however, need not be appetizing.  The Eighth Amendment merely requires that it be prepared and served in a sanitary environment and that it be adequate to meet an inmate's essential nutritional needs.  *See*, *e. g.*, *United States v. Michigan*, 680 F. Supp. 270, 275 (W.D. Mich. 1988) ("Where food is prepared and served in a sanitary manner and is nutritionally adequate to maintain normal health, the fact that it is unappetizing will not, standing alone, state a constitutional claim.").

Likewise, no due process claim is implicated here.  In *Turnboe v. Gundy*, 25 Fed. Appx. 292, 293 (6th Cir. 2001), the Sixth Circuit cited *Sandin v. Conner*, 515 U.S. 472, and concluded that a prisoner, who complained about being fed food loaf, "failed to state a due

process claim because being fed food loaf does not implicate a due process liberty interest." Due process rights are only triggered by the deprivation of a legally cognizable liberty interest. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003). Thus, Antonelli's allegation that he was denied food of proper quality fails under the Fifth Amendment. His claim must be dismissed under Fed. R. Civ. P. 12 (b)(6).

**b.**

In Count 3, Antonelli alleges that Officer Hamilton and Warden Hastings denied him toilet paper for a long period of time. (TRT-MXR-2007-01236.) Though Antonelli filed an administrative tort claim on this matter, he withdrew the tort claim on January 5, 2007.

Antonelli claims that he was "physically damaged and injured" as the result of being denied toilet paper for six weeks [Record No. 61, p.2], but he does not present the court with a medical basis for this broad allegation. *See Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). Thus, the only form of "damage" the alleged denial could have caused is emotional distress. An inmate may not seek damages for emotional distress or mental suffering without showing a prior physical injury. 42 U.S.C. § 1997e(e). *See Mitchell v. Horn*, 318 F.3d 523, 533 (3rd Cir. 2003); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). No physical injury has been established here.

Additionally, two reported district court cases in this circuit specifically address toilet paper deprivation and conclude that the temporary deprivation of toilet paper does not give rise to an Eighth Amendment claim. *See Gilland v. Owens*, 718 F. Supp. 665 (W.D. Tenn.

17

1989); *Gilson v. Cox*, 711 F. Supp. 354 (E.D. Mich. 1989).[7]  The case of *Harper v. Kentucky Dept. of Corrections*, 2007 WL 204002 (E.D. Ky. Jan. 24, 2007) is also instructive.  In *Harper*, this Court held that the plaintiff had failed to state an Eighth Amendment claim with regard to the conditions imposed on him.  Harper was advised that prisons are not required to provide, nor can prisoners expect to receive, "the amenities, conveniences and services of a good hotel." *Id.* at *3 (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (no constitutional violation where prison officials failed to provide prisoner with toilet paper for five days, and with soap, toothbrush and toothpaste for ten days)).  *See also McNatt v. Unit Manager Parker*, 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000) (No Eighth Amendment violation occurred when inmates endured stained, smelly mattresses, unclean cells, no bedding for six days, no cleaning supplies for six days, no toilet paper for one day; no toiletries or clothing for six days, no shower shoes, water that did not function properly; and

---

[7]

    In *Gilland*, the plaintiffs brought a §1983 action challenging numerous conditions of their confinement at a county jail.  One of the complaints involved deprivation of toilet paper. While the court stated that "[s]anitary living conditions and personal hygiene are among the necessities of life protected by the Eighth Amendment," *id.* at 684 (citing *Harris v. Fleming*, 839 F.2d at 1235-36), the court carefully qualified that general rule by stating, "Courts are extremely reluctant, however, to find constitutional violations based on temporary deprivations of personal hygiene and grooming items." *Gilland*, 718 F. Supp. at 684.  The *Gilland* court ultimately concluded that the plaintiffs had suffered only a short-term deprivation of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like, and that such short-term deprivations did not rise to the level of a constitutional violation. *Id.* at 685.  Another apt case is *Martin v. Lane*, 766 F. Supp. 641, 648 (N.D. Ill. 1991), in which a 3- to 18-day lockdown period during which a prisoner may have been deprived of showers, clean laundry, linen and soap, and thereafter developed a skin rash, qualified only as a short-term deprivation.  The court stated that "[t]he shortness of the deprivation mitigated against a finding of [an Eighth Amendment] violation." *Id.  Martin* relied upon the *Gilland* decision and on *Harris v. Fleming*, *supra*.

smaller food portions).  The Court finds that this claim lacks merit and does not survive the defendants' motion to dismiss.

**c.**

In Count 4, Antonelli alleges that Defendant Hastings delayed him from taking a shower.  (TRT-MXR-2007-01235.)  In response to his administrative tort claim,  he was advised that during lock-downs all inmates were given the opportunity to shower every three days.

For the reasons set forth in the preceding passage concerning toilet paper, Antonelli fails to assert a legitimate Eighth Amendment claim based on delays in taking his shower. That claim will be dismissed, as will any derivative claims alleging "emotional distress."

**d.**

In Count 5, Antonelli alleges that Susan Walters, Supervisor of Education, Associate Warden Grindstaff, and Warden Hastings did not properly operate the leisure library during lock-downs.  (TRT-MXR-2007-01234.)  In response to his administrative tort claim, Antonelli was advised that during lock-downs all staff members were assigned to correctional posts including the Education Department.  The Education staff members were directed not to deliver leisure library books during lock-downs.

In his response to the defendants' motion to dismiss, Antonelli complained that "there was absolutely nothing to read during those six weeks [during lock-downs].  This was forced idleness. . .  This was agony."  [Record No. 61, p.3].  He further described the situation as "an atrocity."  [*Id*.].

19

In *Yeaman v. Ward*, 2005 WL 2396509 (W.D. Okla. Sept. 9, 2005), the court found that the denial of educational opportunities and access to leisure library services did not violate an inmate's due process and equal protection rights. Further, Antonelli did not claim that he suffered any psychological problem related to the denial of leisure books; even if he had, no recovery is possible for mere emotional distress absent physical contact. Given this analysis, the Court concludes that Antonelli has failed to state a claim on this issue. This count will be dismissed for failure to state a claim upon which relief can be granted.

**e.**

In Count 6, Antonelli alleges that during lock-downs federal defendants Terrell, Safety Manager, and Warden Hastings did not provide adequate cleaning supplies. (TRT-MXR-2007-03170.) In response to his administrative tort claim, Antonelli was advised that during lock-downs all inmates are given supplies and the opportunity to clean their cells.

This claim lacks merit under a summary judgment analysis, and it will be dismissed. Once again, Antonelli asserted broad claims of personal injury with no medical evidence to substantiate the claim. *See Napier*, 288 F. 3d at 742. For the reasons stated previously, Antonelli cannot base his effort to recover on emotional distress resulting from the alleged denial of cleaning supplies.

In *Dudley v. Doe*, 2007 WL 1344897 (E.D. Mich. May 14, 2007), the court examined an Eighth Amendment claim related to cleaning supplies in a prison. The court concluded that the Eighth Amendment "imposes duties on [prison] officials, who must provide humane

conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(citations omitted). Here, Antonelli alleges that the defendants denied him cleaning supplies during prison lock-down situations.  Most courts addressing the issue have found that a one time, or short duration denial of cleaning supplies or personal hygiene products does not rise to the level of the "unquestioned and serious deprivation of basic human needs" necessary to establish an Eighth Amendment violation.  *See Wilson v. Seiter*, 501 U.S. 294, 308, (1991); *Rhodes v. Chapman*, 452 U.S. at 347.  Therefore, Antonelli has not established a cognizable Eighth Amendment claim.

## f.

In Count 7, Antonelli alleges that Warden Hastings, Associate Warden Batts, and Captain Gourdouze had too many fog counts from June 20, 2006, to June 7, 2007, thereby denying him access to his educational programs.[8]  (TRT-MXR-2007-03176.)  In response to his administrative tort claim, Antonelli was advised that fog count lock-downs are an institutional procedure to perform accountability checks and that such lock-downs do not require justification to the inmate population.

Due process rights are only triggered by the deprivation of a legally cognizable liberty

---

[8]

A fog count occurs in a prison when weather conditions create fog.  Thick fog acts as a cover for inmates which can assist in an escape attempt or other illegal activity.  Prisons are placed into a "lock-down" and inmates are counted to ensure that no prisoner escapes.

interest.  *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003).  Thus, the plaintiff must establish that he had a legally protected interest in participating in education programs.  In *Stackhouse v. Peake*, 2007 WL 3047248 (W.D. Mich. Oct. 17, 2007), the court held that an inmate does not have a federally cognizable liberty interest in participating in educational programs while in prison.  The court cited *Carter v. Morgan*, 1998 WL 69810, at *2 (6th Cir. Feb. 10, 1998) (no constitutional right to educational classes).  *See also Tribell v. Mills*, 1994 WL 236499, *1 (6th Cir. June 1, 1994) (no constitutional right to vocational or educational programs).  Accordingly, Antonelli's claim will be dismissed.

### g.

In Count 8, Antonelli alleges that he taught an adult education class which was canceled by federal defendant Walters, Supervisor of Education.  (TRT-MXR-2007-03641.)  In response to his administrative tort claim, Antonelli was advised that inmates volunteer to teach classes as part of the ACE program and that all classes are subject to the standards of sound correctional principals and are evaluated regarding their impact on the institution.  Antonelli was counseled before the formulation of his Freedom of Information Act (FOIA) course, and he was provided guidance about the appropriateness of the program and curriculum.  Antonelli did not abide by the instructions and the course was canceled.

The same reasons which warranted dismissal of the preceding claim concerning fog counts and limited access to educational programs justify dismissal of this claim.  According to *Stackhouse v. Peake*, 2007 WL 3047248, *Carter v. Morgan*, 1998 WL 69810, at *2, and other cases cited, Antonelli does not have a federally cognizable liberty interest in

participating in, or teaching, educational programs while in prison.

**h.**

In Counts 19 and 54, Antonelli alleges that Associate Warden Grindstaff and Susan Walters, Supervisor of Education, denied him the opportunity to establish a "gavel club." (TRT-MXR-2007-06366.)  In response to his administrative tort claim, Antonelli was informed that the Gavel Starter Club "kit" sent by Toast Masters was not received by USP-Big Sandy.  The BOP contends its mail-room records reveal that the package was not received.  In any event, the Court has already explained that an inmate does not have a federally cognizable liberty interest in participating in educational programs while in prison, which this Court interprets to include participation in a club.  *See Carter v. Morgan*, 1998 WL 69810, at *2,  (no constitutional right to educational classes); *Tribell v. Mills*, 1994 WL 236499, at *1 (6th Cir. June 1, 1994) (no constitutional right to vocational or educational programs).  As such, these claims will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**i.**

In Count 10, Antonelli alleges that Warden Hastings and Consolidated Services Manager Ranum did not regularly provide him with clean clothing during the lock-downs. (TRT-MXR-2007-03645.)  In response to his administrative tort claim, he was advised that during a lock-down inmates are given at least one change of linen per week, a requirement which USP-Big Sandy exceeds.  The federal defendants noted that inmates are given five sets of underclothing and four sets of Khaki clothing.  Inmates may also exchange linens and

clothes each week if the lock-down is protracted.

The Eighth Amendment's prohibition of cruel and unusual punishment restrains prison officials from using excessive force against prisoners. *Hudson v. McMillian*, 503 U.S. 1 (1992). It also requires that prison officials provide humane conditions of confinement, such as adequate food, clothing, shelter, and medical care. *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984). In *Hasenmeier-McCarthy v. Rose*, 986 F. Supp. 464 (S.D. Ohio 1998), the court applied the above standards and concluded that "even if the plaintiff's unsupported allegations regarding deprivation of communication, clean bedding, clean clothing, and hot food during her respiratory isolation period are true, those allegations do not illustrate a deprivation of the necessities of life or basic human needs." The apparel restrictions objected to by Antonelli do not amount to a deprivation of the necessities of life or basic human needs. The claim fails to state any grounds for relief.

### j.

In Count 11, Antonelli alleges that Warden Hastings and Trust Fund Supervisor Vince Arisman denied him information concerning which individuals sent him money for his commissary account. The Court agrees with the defendants that the proper avenue for a request for information from the federal government is through the Freedom of Information Act. For this reason, dismissal of this claim is warranted.

### k.

In Count 12, Antonelli alleges that Warden Hastings and Vince Arisman denied him access to information concerning his telephone list. (TRT-MXR-2007-03647.) In response

to his administrative tort claim, Antonelli was reminded that he prepared a form for the placement of his telephone list.  The BOP informed Antonelli that he had access to and could amend this form.

Here, Antonelli does not assert a valid First Amendment claim.  First, prisons may regulate inmate speech so long as the regulations are reasonably related to legitimate penological interests, such as crime deterrence, rehabilitation, and institutional security. *Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S.Ct. 1874, 104 L. Ed.2d 459 (1989).  In determining whether a prison speech regulation is reasonable, a court must decide if there is a valid, rational connection  between the regulation and a legitimate government interest behind the rule; whether there are alternative means of exercising the right in question; what impact accommodation of the asserted right would have on prison staff, other inmates, and the allocation of prison resources generally; and whether the regulation represents an exaggerated response to prison concerns.  *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L. Ed.2d 64 (1987).  Further, "decisions made by prison officials regarding prison administration are entitled to significant deference."  *Shue v. Herring*, 2006 WL 3940554 * 5 (M. D. N. C. Jan. 12, 2006) (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

In the First Amendment context, "prisoners have no per se constitutional right to use a telephone."  *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000).  *See also Valdez*, 302 F.3d at 1039 (holding that there is no First Amendment right to telephone access; instead there is a First Amendment right to communicate with persons outside of prison walls, and "[u]se of a telephone provides a means of exercising this right"); *Washington v. Reno*, 35

25

F.3d 1093, 1100 (6th Cir. 1994) (holding that "an inmate has no right to unlimited telephone use").  Instead, a prisoner's right to telephone access, if any, is subject to rational limitation based upon legitimate security and administrative interests of the penal institution.  *Arney v. Simmons*, 26 F. Supp.2d 1288, 1293 (D. Kan. 1998) (citing *Washington*, 35 F.3d at 1100).  Regulations limiting telephone use by inmates, including a phone-list restriction similar to the one about which Antonelli complains, have been routinely sustained as reasonable.  *See Pope v. Hightower*, 101 F.3d 1382, 1384-85 (11th Cir. 1996) (pre-approved calling list of no more than ten persons); *Washington v. Reno*, 35 F.3d at 1100 (6th Cir. 1994) (pre-approved calling list of no more than thirty persons); *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989) (pre-approved calling list of no more than three persons for inmates in disciplinary segregation); *Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir. 1988) (inmates allowed to use telephone every other day); *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986) (pretrial detainee's access to telephone subject to reasonable restrictions in the interest of security); *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982) (inmates have no right to unlimited telephone use).  The regulation at issue here was reasonable.  Antonelli's First Amendment claim on this issue lacks merit and must be dismissed with prejudice.  Additionally, the federal defendants correctly note that if Antonelli required further information related to his telephone list, he could have requested it through the Freedom of Information Act.

## l.

In Count 13, Antonelli alleges that Warden Hastings, Associate Warden Grindstaff, and Supervisor of Education Walters denied him proper access to a typewriter.

(TRT-MXR-2007-03649.)  In response to his administrative tort claim, Antonelli was advised that there are thirty-six (36) typing terminals at USP-Big Sandy and thirty-nine (39) typing stations.  He was further advised that there were Alpha Smart Neo units which use wireless keyboards.  According to the defendants, Antonelli neither requested a Neo nor advised the BOP that he was facing a court deadline.

The Court concludes that Antonelli has again failed to state a valid constitutional claim.  As the defendants correctly argue, established case law dictates that prisoners do not enjoy a constitutional right to a typewriter.  *See*, *e.g.*, *Taylor v. Coughlin*, 29 F.3d 39, 40 (2d Cir. 1994) (no constitutional right to access the courts with a typewriter with specific memory capabilities); *Sands v. Lewis*, 886 F.2d 1166, 1172 (9th Cir. 1989) (First Amendment does not require that inmate have access to typewriter in his cell); *American Inmate Paralegal Assoc. v. Cline*, 859 F.2d 59, 61 (8th Cir. 1988) (no constitutional right to a typewriter); *Tyler v. Cline*, 488 U.S. 996 (1988); *Twyman v. Crisp*, 584 F.2d 352, 358 (10th Cir. 1978) (right to access courts does not include a federally protected right to use a typewriter) (since prisoners are not prejudiced by filing handwritten documents, there is no constitutional right to typewriters).  Further, the defendants persuasively point to *Moore v. Sheets*, 2006 WL 3298325 (E.D. Mich. Nov. 2006), in which a sister court in this circuit held that inmates do not have a constitutional right to a typewriter as a necessary implement of meaningful court access.  *See also Stubblefield v. Henderson*, 475 F.2d 26 (5th Cir. 1973) (per curiam); *Inmates, Washington County Jail v. England*, 516 F. Supp. 132, 140 (E.D. Tenn. 1980) ("An inmate has a constitutional right to have access to the courts, a right which

27

includes the right to have paper, pens or pencils.  However, that right does not include any constitutionally protected right to have the use of a typewriter.") (citations omitted)).  Based upon the overwhelming case authority on this topic, the Court finds that Antonelli has asserted no viable First, Fifth, or Eighth Amendment claim concerning his lack of access to a typewriter.  The claim will be dismissed.

**m.**

In Count 50, Antonelli alleges that federal defendant Susan Walters, Supervisor of Education, did not fix an "undo" button on the law library computers and Antonelli lost his legal research as a result.  (TRT-MXR-2007-06213.)  In response to his administrative tort claim, Antonelli was advised that there was an announcement in the Education Department for two months concerning a system change.  That announcement advised inmates to save their research.  The BOP contends that it was Antonelli's responsibility to print his materials.

It is well-established that prisoners have a constitutional right of access to the courts.  *See Bounds v.  Smith*, 430 U.S. 817, 821, (1977).  In addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them.  *Id*. at 824-25.  Antonelli fails to argue or show that the actions of the defendant caused any actual injury to him.  Clearly, Antonelli has used computers in filing papers in this action; none of his pleadings have been handwritten.  Further, he does not describe any specific non-frivolous legal claim that was hindered by the purported problem with the law library computer.  *See Lewis v. Casey*, 518 U.S. at 349.  Stated otherwise, Antonelli has not

demonstrated that he was prejudiced as a result of the loss of legal research.  At best, he may have been inconvenienced, a status which does not trigger a constitutional claim.  Thus, Antonelli's claim lacks merit and will be dismissed under Fed. R. Civ. P. 12(b)(6).

**n.**

In Count 14, Antonelli alleges that Warden Hastings and Associate Warden Smith subjected Antonelli to "group punishment."  (TRT-MXR-2007-03648.)  The BOP responded to Antonelli's administrative tort claim by noting that he had failed to identify a specific incident or issue where he was a "victim," and the claim was denied.

The defendants contend, and the Court agrees, that Antonelli did not define "group punishment."  Antonelli's broad allegation of a constitutional violation based on "group punishment" is void for vagueness.  Because the claim lacks  specificity, it does not provide the defendants with proper notice of the claim.  Neither the defendants nor this Court should be required to "conjure up unpled allegations."  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  "A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.  But when a complaint omits the facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988) (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n. 3 (1st Cir. 1976), *cert. denied*, 431 U.S. 914 (1977)). Accordingly, Count 14 will be dismissed.

29

**o.**

In Count 15, Antonelli alleges that Food Services Administrator Baines served food

containing saccharin.  (TRT-MXR-2007-03650.)  In response to his administrative tort claim,

he was advised that the FDA does not require warning labels related to saccharin.  Baines

responded to Antonelli's allegations by noting that the prison revealed which foods contained

saccharin.  He argues that Antonelli was able to avoid any foods containing saccharin and

that if he consumed foods containing that substance, it was by his own choice.

As noted, the Eighth Amendment imposes duties on prison officials, who must

provide all prisoners with the basic necessities of life such as food, clothing, shelter,

sanitation, medical care, and personal safety.  *Farmer*, 511 U.S. at 832;  *DeShaney v.*

*Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989).  Antonelli's Eighth

Amendment claim concerning saccharin content in his food, however, lacks merit.  First, he

has not provided any medical proof that consumption of the product adversely affected him.

Second, the case law is not in his favor.  In *McKay v. Geo Group, Inc.*, 2007 WL 4590308,

(W.D. La. 2007), the district court rejected a prisoner's Eighth Amendment claim that he was

being forced to consume food products containing saccharin.  That district court noted that

because of labeling and disclosure, the prisoner-plaintiff was able to avoid eating foods

containing saccharin.[9]  *See also Murray v. Matty*, 1985 WL 4948, at *1 (E.D. Pa 1985)

---

[9]

The Louisiana district court aptly analyzed the issue as follows:

"The manufacture and consumption of saccharin is not prohibited in the United
States.  Nor is there any indication that he is being forced to consume the jelly which
he clearly knows contains the sweetener.  Plaintiff's belief that saccharin has possible

(Prisoner failed to show that the prison diet was inadequate as a consequence of the presence of saccharin in juice; he failed to demonstrate any actual adverse effects and did not state that he was forced to consume beverages containing saccharin) ("Rather, it appears that plaintiff is free to choose whether or not he will consume products containing saccharin. This situation can hardly be considered 'cruel and unusual punishment' as contemplated by the Eighth Amendment." (citation omitted)).  Antonelli's claim lacks any substance and will be dismissed with prejudice.

**p.**

In Count 17, Antonelli alleges that he was subjected to "phony" lock-downs which were "protracted" by former Warden Hastings.  In Count 20, Antonelli alleges that Associate Warden Grindstaff and Warden Hastings denied him adequate recreation during the lock-downs.  The defendants persuasively defend the actions taken with respect to the lock-downs ordered, citing the cases of *Cook v. Campbell*, 173 F.3d 854 (Table), 1999 WL 183316 (6th Cir. 1999), and *Sandin v. Conner*, 515 U.S. 472, 486 (1995).  In *Cook*, the plaintiff alleged that after a fight between prison gang members, the entire prison was locked down for a four-

---

adverse effects on health certainly does not give rise to an Eighth Amendment violation.  Plaintiff's allegations are speculative and conclusory and do not show a deprivation of the minimal civilized measure of life's necessities.  Thus, his claims do not constitute cruel and unusual punishment. Further, nothing that plaintiff has alleged demonstrates the existence of deliberate indifference on the part of the defendants so as to state a Section 1983 claim.  **Serving jelly containing saccharin simply does not constitute the unnecessary and wanton infliction of pain repugnant to the conscience of mankind**.

*McKay*, 2007 WL 4590308, at *2 (emphasis added).

month period.  1999 WL 183316, at *1.  Citing *Sandin v. Conner*, the Sixth Circuit held that

the imposition of lock-down status is not an atypical, significant deprivation from the

ordinary circumstances of prison life and that prisoners have no liberty interest in remaining

free from lock-down.  *Id.* (citing *Sandin*, 515 U.S. at  486.).

The defendants further argue that to the extent that Antonelli's ability to use the

prison law library was restricted during the lock-downs, he has not alleged that this

restriction actually hindered his ability to pursue a legal claim.  Under *Lewis v. Casey*, 518

U.S. 343, 351 (1996), this is the criteria for establishing a valid lack of access to the courts

claim.

Courts must give reasonable leeway to the decisions prison officials make when there

is a lock-down.  *Hoptowit v. Ray*, 682 F.2d at 1237, 1259 (9th Cir. 1982).  Although Antonelli

also alleges that he was not provided with sufficient exercise while on lock-down status, the

restriction of exercise during a prison lock-down is appropriate.  *See Arce v. Walker*, 139

F.3d 329, 337 (2d Cir.1998); *Thomas v. Ramos*, 130 F.3d 754, 764-65 (7th Cir. 1997).

Further, the defendants lawfully restricted prison visitation during the lock-downs, as prison

inmates have no constitutional right to visitation.  *See Bazzetta v. McGinnis*, 124 F.3d 774,

779 (6th Cir. 1997).  And prison officials properly restricted inmates' religious services during

the lock-down period because the restrictions were reasonably related to legitimate prison

concerns.  *See Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985).  Antonelli's general

assertion of a "phony" lock-down for a "protracted" period of time fails to state a claim upon

which relief can be granted.

Finally, Antonelli's argument that he was either denied, or experienced a reduction in, various privileges (restricted access to prison programs, restricted access to sources of information; restricted access to law libraries), while in lock-down status is without merit. *See Carter v. Tucker*, 69 Fed. Appx. 678, 680 (6th Cir. 2003) (loss of privileges and placement in segregation does not implicate a liberty interest sufficient to invoke the Due Process Clause). Accordingly, Antonelli's claims will be dismissed.

### q.

In Count 27, Antonelli alleges that federal defendant Vern Morgan, the UNICOR Factory Manager, provided inmates in UNICOR unspecified "preferential treatment" during the lock-downs. Inmates are not a protected class for purposes of an equal protection analysis. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). An inmate cannot establish a violation of his equal protection rights simply by showing that other inmates were treated differently. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 114 S. Ct. 127 (1993). *See also Mahoney v. Carter*, 938 S.W.2d 575, 577 (Ky. 1997) (difference in treatment of incarcerated persons does not constitute a denial of equal protection of laws absent a showing of suspect classification). A prisoner must show that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim." *Newell*, 981 F.2d at 887 (citing *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir. 1988)). Antonelli does not allege any type of suspect classification which would allow him to invoke a Fifth Amendment equal protection argument. The claim must be dismissed under Fed. R. Civ. P. 12(b)(6).

**r.**

In Count 41, Antonelli alleges that Warden Hastings and other unnamed federal defendants are responsible for treating him and other inmates at USP-Big Sandy "inhumanely" during the lock-downs. Antonelli does not allege the precise nature of this inhumane treatment. Instead, he makes only vague and conclusory assertions, which are insufficient to maintain a claim under *Bivens*. Therefore, this claim must be dismissed.

**s.**

In Count 42, Antonelli alleges that Captain Gourdouze and other unnamed federal defendants violated his constitutional rights by conducting shakedowns and searches during lock-downs. The Court has already discussed the fact that prison administrators are vested with the responsibility of ensuring the security and safe operation of their facilities. This is accomplished, at least in part, by unscheduled cell searches and "shakedowns." BOP Program Statement 5251.05, *Searches of Housing Units, Inmates and Inmate Work Areas*, permits prison officials to search an inmate's housing and work areas and personal items without consent from the inmate or prior approval.

Antonelli alleges no physical injury in connection with the searches and shakedowns about which he complains. At best, his claims would be based on emotional distress. Such claims are barred by 42 U.S.C. § 1997e(e), as seen in *Woodford v. Ngo*, 548 U.S. 81 (2006); *Adams v. Rockafellow*, 66 Fed. Appx. 584 (6th Cir. 2003) ("Nowhere in Adams's pleadings does he even suggest that he was subjected to any physical injury whatsoever as a result of the strip-searches. Rather, Adams claims a mental or emotional injury as a result of the

34

strip-searches. Title 42 U.S.C. § 1997e(e) precludes any claim by a prisoner 'for mental or emotional injury suffered while in custody without a prior showing of physical injury.'"); and *Cassidy v. Indiana Dept. of Corrections*, 199 F.3d 374 (7th Cir. 2000).

Courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). The Supreme Court has explicitly rejected heightened judicial scrutiny of prison policies. Rigorous scrutiny, the Court noted, is simply "not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons." *Thornburgh v. Abbott*, 490 U.S. 401, 409-10, 109 S. Ct. 1874 (1989). Accordingly, Antonelli's claim regarding unscheduled searches and shakedowns will be dismissed.

### t.

In Count 39, Antonelli alleges that federal defendant Terrell, Safety Manager, failed to address pest control during the lock-downs. Antonelli claims that his cell was "overrun with ants" [Record No. 61, p.9]. Antonelli has admitted that he failed to properly exhaust this particular claim. [*See* Record No. 65, p.2 as to Count # 39]. Even if the claim had been administratively exhausted, Antonelli has not demonstrated how he was adversely affected, or actually harmed, by the alleged deficiencies involving pest control. However unpleasant this may have been, Antonelli alleges no physical harm or detriment resulting from the alleged ant exposure. And Antonelli cannot recover damages for emotional distress resulting from an unpleasant prison condition. The claim will be dismissed.

**u.**

In Count 17, Antonelli alleges that he was subjected to price gouging by federal

defendant Vince Arisman, Trust Fund Supervisor.  The Court agrees with the defendants that

this claim lacks merit.  In *Dotson v. Calhoun County Sheriff's Department*, 2008 WL 160622

(W.D. Mich. Jan. 15, 2008), the court examined an inmate's challenge to price gouging

allegations concerning the telephone and commissary.  Inmates have no federal constitutional

right to be able to purchase items from a commissary.  *Id*. at *4.  *See also Tokar v.*

*Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e note that we know of no

constitutional right of access to a prison gift or snack shop.");  *Hopkins v. Keefe Commissary*

*Network Sales*, 2007 WL 2080480, at *5 (W.D. Pa. July 12, 2007).  Simply put, as Antonelli

had no federal constitutional right to purchase commissary items, he had no right to purchase

items at a particular price or to prevent the charging of exorbitant prices.  *Hopkins*, 2007 WL

2080480, at *5 (citing *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980)); *McCall v.*

*Keefe Supply Co.*, 71 Fed. Appx. 779, 780 (10th Cir. 2003) (stating that an inmate's claim that

prison commissary charged "outrageous" prices for goods purchased through the prison

commissary failed to state a constitutional claim).  Therefore, Antonelli's claim regarding

allegedly excessive commissary pricing will be dismissed for failure to state a claim under

Fed. R. Civ. P. 12(b)(6).

**v.**

In Count 18, Antonelli alleges that defendant Lynn Harper, Inmate Systems Manager,

infringed upon his access to the courts because a legal mailing, weighing over one pound, was delayed. (TRT-MXR-2007-04183.) In response to his administrative tort claim, Antonelli was advised that the USP-Big Sandy mail room staff follow BOP national policy. He was further advised that inmates have an obligation to comply with established procedures concerning modified legal mailings. Inmates were made aware on February 8, 2006, that effective March 15, 2006, new procedures would be in place for legal mailing weighing sixteen (16) ounces or more. Pursuant to these new procedures, Antonelli was required to provide an "Authorization to Mail Package" form.

A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives. *See Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). As the Sixth Circuit has noted, "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993). Additionally, not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. *In Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003), the court found that mail from legal sources having little or nothing to do with safeguarding a prisoner's access to the courts, or protecting an inmate's relationship with an attorney, could be opened outside the presence of a prisoner.

Here, Antonelli has alleged in broad and vague terms that he was prejudiced by the weight restriction. He fails, however, to allege how the restriction caused him any actual harm. Unless a person has experienced an actual injury, as opposed to a speculative claim of

injury, the person is without standing to assert a civil rights claim.  *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471 (1982); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487 (6th Cir. 1995).  For these reasons, the court determines that Antonelli has failed to demonstrate that he was denied access to the courts or that he was actually hindered in his ability to pursue a specific legal claim.  *See Lewis v. Casey*, 518 U.S. 343, 351 (1996).

**w.**

In Count 21, Antonelli alleges that Vince Arisman, Trust Fund Manager, limited the number of copy card inmates could possess, thus denying him access to the courts. (TRT-MXR-2007-04184.)  In response to his administrative tort claim,, Antonelli was advised that each copy card is worth fifty (50) copies.  USP-Big Sandy limited the number of cards to two per inmate, per sale.  Provisions were made if an inmate needed additional cards for a pending legal deadline.

The case law on this point is overwhelmingly persuasive.  The defendants correctly note that the Tenth Circuit held that "[a] prisoner's right of access to the courts does not include the right of free unlimited access to a photocopying machine, particularly when as here, there are suitable alternatives."  *Harrell v. Keohane*, 621 F.2d 1059, 1061 (10th Cir. 1980) (per curiam).  Other circuits have followed suit.  In *Kershner v. Mazurkiewicz*, 670 F.2d 440 (3d Cir. 1982), the Third Circuit followed the Tenth Circuit's rule, holding that "'[t]he constitutional concept of an inmate's right of access to the courts does not require that prison officials provide inmates free or unlimited access to photocopying machinery.'"  *Id*. at

38

445 (quoting *Johnson v. Parke*, 642 F.2d 377, 380 (10th Cir. 1981).  *See also Wanninger v. Davenport*, 697 F.2d 992, 994 (11th Cir. 1983) (per curiam) (jail officials do not necessarily have to provide a prisoner with free, unlimited access to photocopies of legal documents in order to protect the prisoner's right of access to the courts); *Jones v. Franzen*, 697 F.2d 801, 803 (7th Cir. 1983) (circuit court reversed district court injunction of state prison authorities photocopying policy); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980) (calling prisoner's allegation that he was denied due process because of a prison regulation restricting the use of the prison library's photocopying machine "baseless); *Fluhr v. Roberts*, 460 F. Supp. 536, 540 (W.D. Ky. 1978) (Plan for law library services upheld without provision for inmate access to photocopier).

Antonelli has also failed to establish an actual injury in connection with this claim. He does not allege that he was actually denied access to the court or hindered in his ability to pursue a legal claim, as required for a successful access to the courts claim under the criteria established by *Lewis v. Casey*, 518 U.S. 343 at 351.  Therefore, this claim will be dismissed for failure to state a claim upon which relief can be granted.

**x.**

In Count 23, Antonelli alleges he was denied a written copy of a Team Review by federal defendant Melissa Parr, Case Manager.  Antonelli's request should have been pursued pursuant to a Freedom of Information Act request to the BOP.  Accordingly, the claim will be dismissed.

**y.**

39

In Count 24, Antonelli alleges that Susan Walters, Supervisor of Education, failed to provide Antonelli with unspecified reference books.  (TRT-MXR-2007-04174.)  In response to his administrative tort claim, he was informed that all of the books he requested were and are in the Education Department.

In *Bonga v. Caruso*, 2007 WL 1686336 (W.D. Mich. June 8, 2007), the court held that in order to state a viable claim for interference with access to the courts, an inmate must make a specific claim that he was adversely affected or that existing litigation was prejudiced. (citing *Vandiver v. Niemi*, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).  An inmate cannot show injury when he still has access to his legal materials by request, *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).  Antonelli has failed to demonstrate an actual injury as a result of this claim.  He does not allege that he was actually hindered in his ability to pursue a legal claim, as required for a successful access to the courts claim.  *See Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Indeed, the fact that he filed this litigation leads to the inescapable conclusion that Antonelli has not in any respect been hindered from accessing this Court.  Therefore, Antonelli's claim will be dismissed.

**z.**

In Count 26, Antonelli alleges that Dr. King, Chief Psychologist, denied him access into the CODE program.  This claim will be dismissed.  As discussed, prisoners enjoy no constitutional right to vocational training or rehabilitative programs, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), or prison jobs, *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989).  *See also Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *Bulger v. United States*

40

*Bureau of Prisons*, 65 F.3d 48, 49-50 (5th Cir. 1995); *Jimenez v. United States*, 2007 WL

3232469 (S.D. Ohio Nov. 1, 2007) (inmates do not have a federal constitutional right to

participate in rehabilitative programs).  As such, Antonelli has failed to state a claim

concerning the CODE program under Fed. R. Civ. P. 12(b)(6).

### aa.

In Count 47, Antonelli alleges that federal defendant Vernon Morgan, UNICOR

Factory Manager, Brian Salyers, Correctional Counselor, and Susan Walters, Supervisor of

Education, had some unspecified involvement in Antonelli terminating his UNICOR work

assignment.  He claims he was compelled to forfeit his prison job in order to focus on his

legal pleadings.

As this Court held in *Watson v. Rios*, 2007 WL 2792179 (E.D. Ky. Sept. 21, 2007),

the United States Constitution does not create a property or liberty interest in prison

employment.  *See also Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989).  Inmates enjoy

no protected liberty interest in maintaining a UNICOR job.  Antonelli had no legally

protected right to his UNICOR work assignment.  He decided to terminate his position, and

he cannot be heard to blame the defendants for a choice he made.  His claim will be

dismissed.

### bb.

In Count 28, Antonelli alleges that defendant Fazenbaker, Unit Manager, denied him

access to his appeal records.  (TRT-MXR-2007-04180.)  In response to his administrative tort

claim, he was advised that all court documents were forwarded to the Unit Manager.

Antonelli was permitted to review all the documents and he was given copies of the pages he requested.  When Antonelli completed his review, the documents were returned to the Court of Appeals.

While most of the claims discussed herein have been dismissed on the merits, this one will be dismissed for a different reason.  The record reveals that Antonelli admitted that he did not fully exhaust this claim through the administrative process.[10]  Specifically, he stated, "No response to cop-out to BP-8 1/2 and no further attempt necessary."  [Record No. 65, p. 2].  Antonelli is incorrect in his assertion that the absence of a written denial of the BP-8 Request prevented him from pursuing further grievance efforts.  There is no language which requires an inmate to produce written denial of a BP-8 request prior to filing a BP-9.  The regulation provides as follows:

> **(a) Submission. The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.**
>
> (b) Extension.  Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed.  In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time

---

[10]

The administrative remedies available to inmates confined in BOP institutions are set out in the Administrative Remedy Program, found at 28 C.F.R. §§ 542.10-19.  Section 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy.  If the inmate cannot informally resolve his complaint, then he may file a formal written request (a BP-9 form) to the Warden.  *See* § 542.14(a).  If the inmate is not satisfied with the Warden's response, he may appeal (BP-10) to the Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal (BP-11) to the Office of General Counsel.  *See* § 542.15(a) - (b).

frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under §542.19 of this part was delayed.

§542.14 (emphasis added). Clearly in the absence of a written denial of the BP-8 Request, Antonelli would have been authorized to pursue a BP-9 Request for Administrative Remedy with the warden. It appears that Antonelli chose not to do so.

Under federal law, it is insufficient for a prisoner to merely claim that grievances were not answered satisfactorily or to begin the grievance process and not finish it. For any issue the plaintiff intends to raise, he must demonstrate exhaustion, or his attempts at exhaustion, before he can be considered to have substantially complied with the law. *See Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999). The United States raised the exhaustion defense in its motion and supported the allegation by Declaration of Denise Gottleib [Record No. 55-4]. The Court determines that this claim has not been exhausted. It will be dismissed on that ground.

### cc.

In Count 29, Antonelli alleges that Susan Walters, Supervisor of Education, denied him carbon paper for his legal work. Again, Antonelli admitted that he had not administratively exhausted this claim [*See* Record No. 65, p. 2]. Even if he had, the claim would suffer a fatal defect because Antonelli has not demonstrated actual harm from the alleged denial of carbon paper. Further, in *Muhammad v. Collins*, 241 Fed. Appx. 498, 2007

43

WL 2039125 (10th Cir. July 17, 2007), the Tenth Circuit addressed a similar claim.  The court

held that failure to give an inmate carbon paper or access to photocopying equipment free of

cost in connection with his litigation did not deny him access to the courts absent evidence of

any meaningful legal need for copies or carbon paper.  *Id.* at 499.  Thus, this claim will be

dismissed under Fed. R. Civ. P. 12(b)(6).

### dd.

In Count 30, Antonelli alleges that his legal mail was delayed by federal defendant

James Link, Special Investigative Agent.  Again, Antonelli has admitted that he failed to

properly exhaust this particular claim.  [*See* Record No. 65, p. 3 as to Count #30].  This claim

will be dismissed for failure to follow the administrative exhaustion process set forth in 28

C.F.R. § 542.13-15.

### ee.

In Count 33, Antonelli alleges federal defendant Steve Parr, Facilities Manager, failed

to properly maintain pipe chases causing flooding in inmate cells.  (TRT-MXR-2007-04181.)

In response to his administrative tort claim, Antonelli was advised that during lock-downs

inmates place excessive materials and trash in the toilets and they are flushed, causing

plumbing issues.

Again, Antonelli has admitted that he failed to properly exhaust this particular claim.

[*See* Record No. 65, p. 2 as to Count # 33].  Even if the claim had been administratively

exhausted, Antonelli has not demonstrated how he was adversely affected, or actually

harmed, by the alleged deficiencies with the plumbing system.  Antonelli claimed that he "woke to raw sewage in the mornings on the floor of his cell."  [*See* Response, Record No. 61, p. 8].  However unpleasant this may have been, Antonelli alleges no physical harm or detriment resulting from the alleged exposure.  Even assuming his allegations are true, as it has been stated in previous sections of this Order, Antonelli cannot recover damages for emotional distress resulting from an unpleasant prison condition.  Accordingly, this claim will be dismissed.

**ff.**

In Count 34, Antonelli alleges that Case Manager Parr and Case Management Coordinator Legg improperly classified him in a higher security facility.  This claim fails on the merits because there is no inherent constitutional right to placement in a particular security classification.  *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Moody v. Daggett*, 429 U.S. at 88; *Newell v. Brown*, 981 F.2d 880, 883 (6th Cir. 1992); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986); *Hayes v. Patton*, 2007 WL 1959136 (E.D. Ky. July 2, 2007) (in general, an inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification within that institution). Congress has given federal prison officials full discretion to control the conditions of confinement.  Thus, prisoner classifications within the federal prison system are not directly subject to due process protections.  *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir. 1995).  Antonelli's claim on this issue is devoid of merit and will be dismissed.

**gg.**

In Count 40, Antonelli alleges that Case Manager Parr failed to correct allegedly erroneous information located on a security designation sheet.  Antonelli claims that this oversight and/or error adversely impacted his ability to obtain parole.

Antonelli has failed to point the court to any documents that would indicate that he administratively exhausted this claim [*See* Record No. 65,  p. 2; no reference to Count # 40]. Regardless, it must be remembered that a convicted prisoner has no inherent right to parole under the Constitution.  *See Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987); *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979).  Rather, the grant of parole is a matter of "grace or gift" to persons deemed eligible for reasons found by the parole authority.  *See Lynch v. Wingo*, 425 S.W.2d 573, 574 (Ky. 1968); *Allen v. Seabold*, 989 F.2d 498 (6th Cir. 1993).  Antonelli's allegations fail to state a claim upon which relief can be granted.

**hh.**

In Count 43, Antonelli alleges that Vince Arisman, Trust Fund Supervisor, violated his constitutional rights by improperly managing the Trust Fund.  Antonelli does not describe in his Complaint [Record No. 2, p. 14] or in his response to the defendants' motion to dismiss [Record No. 61, p. 9] how he was injured as the result of this alleged mismanagement. Vague and conclusory statements are insufficient to state a civil rights claim.  *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Accordingly, this claim must be dismissed.

**ii.**

46

In Counts 44 and 51, Antonelli alleges that federal defendant Parr, Case Manager, failed to timely complete Antonelli's Progress Report. Antonelli further alleges that the Report contained inaccurate information and harmed his Parole hearing. (TRT-MXR-2007-06209 and TRT-MXR- 2007-06214.) In response to his administrative tort claims, Antonelli was advised that he was not entitled to a progress report for his parole hearing. He was also advised that his Case Manager could update his pre-release progress report. Antonelli's Case Manager informed him that there was no negative information in the report.

Antonelli fails to state a claim on this issue, as a "Progress Report" is part of the inmate classification process. As has been explained previously, the classification process is left to the discretion of BOP officials. Prisoners have no protected Fifth Amendment due process rights associated with that process. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976). Furthermore, Antonelli failed to allege with any specificity how or in what manner the report was fictitious, or what steps he took to correct the information. Accordingly, Counts 44 and 51 will be dismissed.

**jj.**

In Count 45, Antonelli alleges that federal defendant Valene Jordan, Vocational Training Instructor, violated his constitutional rights by failing to save his educational and vocational records. Antonelli alleges that as a result of this alleged failure he had to "do the courses all over again . . . to get credit." [Record No. 61, p. 10.] While this may have been

an inconvenience, he admits that he received the educational credit.  His complaint about lost records does not allege an actual injury which would entitle him to damages.  Any emotional distress is not compensable.  Accordingly, his claim must be dismissed.

### kk.

In Count 46, Antonelli alleges that Warden Rios violated his constitutional rights by failing to investigate unnamed constitutional violations alleged to have been made by federal defendants Parr and Walters.  This claim is vague and overly broad.  While it survived initial screening, Antonelli has not carried his burden at the summary judgment stage.  Antonelli did not allege what issues required investigation, and he did not allege what duty defendant Rios had to investigate these unidentified violations.  His claim will be dismissed.

### ll.

In Count 48, Antonelli alleges he was denied adequate access to his parole hearing tapes by federal defendants Susan Walters, Supervisor of Education, and Valene Jordan, Vocational Training Instructor.  According to the BOP, Administrative Tort Claim TRT-MXR-2007-05920 reflects that Antonelli was permitted to review his Parole Commission tapes in the Education Department on May 14, 2007.  The BOP contends that Antonelli was not denied access to the tapes.

First, Antonelli's claim is moot.  He admitted that he actually obtained access to the tapes through another staff member [Record No. 61, p. 10].  Second, Antonelli failed to show how the federal defendants had any involvement in delaying or denying his review of the parole tapes.  Antonelli further failed to allege that he was denied access to the court or that

he was actually hindered in his ability to pursue a legal claim with the Parole Commission, as required for a successful access to the courts claim.  *See Lewis v. Casey*, 518 U.S. 343, 351 (1996).  His claim will be dismissed.

### mm.

In Count 9, Antonelli alleges that as a result of "protracted lock-downs," Warden Hastings did not respond to Antonelli's remedy requests pursuant to 28 C.F.R. § 542.10 *et seq*. or to his "copouts."[11]  In other words, Antonelli complains about the effectiveness of the prison's administrative remedy process while the facility was operating under lock-down status.

First, it is well established that prison authorities are to be accorded substantial deference in the administration of all matters, and in particular to matters which affect safety and security.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).  The Supreme Court has emphasized that "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to

---

[11]
The federal defendants define a "protracted lock-down" as a temporary confinement of inmates in a correctional facility to their cells on a 24-hour basis with no outside contact and little if any ordinary privileges or recreation.  They explain that such a restriction on the normal activity of prisoners is implemented as a security measure following an escape or riot or during the course of some other prison emergency.  They further assert that courts have afforded prison officials considerable latitude by the courts in the use of such lock-downs, both in terms of duration and quality.

In explaining a "copout," the federal defendants refer to BOP Program Statement 5511.07, *Inmate Request to Staff*.  They assert that purpose and scope of that Program Statement is to provide procedures which allow an inmate to make a written request to a staff member.  The program objective is that all inmates will have the opportunity to address written questions, requests, or concerns to any BOP employee.

preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321-22, 106 S. Ct. 1078 (1986).  Indeed, in *Austin v. Wilkinson*, 2002 WL 32828651 (N.D. Ohio, July 12, 2002) (Not reported in F. Supp. 2d), the Sixth Circuit reversed a lower court because it failed to accord adequate deference to the judgment of prison authorities regarding restrictions on law library access to prisoners who were in lock-down status.[12]

Here, Antonelli complains about past wardens' alleged failure to respond to his administrative remedy requests while the prison was in lock-down status.  This Court is not going to second guess the prisons adminstrators' decisions relating to the manner in which grievances were handled during difficult lock-down periods.  This is particularly true given the fact that after two inmates had been killed, USP-Big Sandy was required to place its prisoners on a fairly long lock-down status in late 2006 in order to preserve internal order,

---

[12]

In *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254 (1996) the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  The Court established this standard because it felt that prison administrators should make the difficult judgments concerning institutional operations.  *See id*.  Turner described four factors for courts to consider when determining the reasonableness of the regulation at issue.  Those factors are: 1) there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; 2) whether an inmate has alternate means to exercise the right limited by the action; 3) what impact the accommodation of the alleged constitutional right will have on prison staff, other inmates, and on the general allocation of prison resources; and  4) whether there are an absence of effective alternatives without more than de minimis cost.  *See* 482 U.S. at 89-90.  A district court is not required to weigh evenly, or even consider explicitly, each *Turner* factor.  *See Spies v. Voinovich*, 173 F.3d 398, 403-04 (6th Cir. 1999).

institutional security, and discipline.[13]

Finally, even absent lockdown considerations, the defendants correctly note that there

is no constitutional right to an effective grievance procedure.  *Flick v. Alba*, 932 F.2d 728,

729 (8th Cir. 1991); *Flowers v. Tate*, 925 F.2d 1463 (6th Cir. 1991); *Spencer v. Moore*, 638 F.

Supp. 315, 316 (E.D. Mo. 1986); *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Antonelli's Fifth Amendment claim lacks any merit and will be dismissed under Fed. R. Civ.

P. 12(b)(6).

**nn.**

In Count 60, Antonelli alleges that Defendant Salyers, Correctional Counselor, denied

him access to file forty-two administrative remedy requests.  (TRT-MXR-2007-03642,

TRT-MXR-2007-00277 and TRT-MXR-2007-06217.)  In response to his administrative tort

---

[13]

*See LaBatt v. Twomey*, 513 F.2d 641 (1975), wherein the Seventh Circuit considered
the issue of lock-down confinement:

 The due process clause provides an elastic, flexible standard which varies with
attendant circumstances. . . .

In situations such as the present, when prison authorities are allegedly reacting to
emergency situations in an effort to preserve the safety and integrity of the
institution, the state's interest in decisive action clearly outweighs the inmates'
interest in a prior procedural  safeguard. '[T] he possibility of widespread
violence is a continuous  condition of prison life. A good faith determination that
immediate action is necessary to forestall a riot outweighs the interest in accurate
determination of individual culpability before taking precautionary steps.'
(Citations omitted).

*Id*. at 645.

claims on this matter, Antonelli was informed that his Central Inmate file reflects that he filed numerous "cop-outs" evidencing access.  Further, as stated previously, Antonelli has no constitutional right to an effective grievance procedure.  *See, e.g., Flick v. Alba*, 932 F.2d at 729.  Accordingly, the claim will be dismissed under Fed. R. Civ. P. 12(b)(6).

### oo.

In Count 31, Antonelli alleges that Unit Manager Fazenbacker did not give him sufficient "cop-outs."  The Court notes that by his own admission, Antonelli abandoned the exhaustion process on this issue [*See* Record No. 65, p. 2].  The Supreme Court has held that in order to satisfy the requirement that administrative remedies be exhausted prior to filing suit, those remedies must be exhausted properly and within the time frames required by the remedy process.  *Woodford v. Ngo*, 126 S.Ct. 2378, 2387-88 (2006).  Although he claims that after filing the BP- 8 ½ "nothing more was needed," this is incorrect.  As the Court has explained previously, Antonelli was required to have submitted a BP-9 "Request for Administrative Remedy" with the warden.  There is nothing in the BOP's regulations which states that the absence of a response at the informal, or staff level, allows an inmate to bypass the entire grievance process.  Because Antonelli failed to properly exhaust this claim, it will be dismissed.  Antonelli's claim also fails on the merits because he has no constitutional right to an effective grievance procedure.  *See, e.g., Flick v. Alba*, 932 F.2d at 729.

### pp.

In Counts 32 and 38, Antonelli alleges that Correctional Counselor Salyers did not give him sufficient administrative remedies forms.  (TRT-MXR-2007-06217 and TRT-MXR-

00277.)  In response to his administrative tort claims, Antonelli was advised that his Correctional Counselor provided him with remedy forms.  As stated previously, Antonelli has no constitutional right to an effective grievance procedure.  *See, e.g., Flick v. Alba*, 932 F.2d at 729.  He therefore fails to state a claim under Fed. R. Civ. P. 12(b)(6).

### qq.

In Count 52, Antonelli alleges that Defendant Robert Ranum, Consolidated Services Manager, retaliated against him for filing administrative remedy requests.  The Sixth Circuit held in *Thaddeus-X  v. Blatter, et al*., 175 F.3d 378 (6th Cir. 1999), that a prisoner's claim that prison officials have engaged in retaliation against him for engaging in protected conduct is grounded in the First Amendment.  *Id*., at 887-88.  The Court further stated that a retaliation claim has three elements: 1) the prisoner engaged in protected conduct; 2) an adverse action was taken against the prisoner that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements, i.e., the prisoner's protected conduct motivated at least in part the adverse decision.  *See id*. at 394.  Additionally, cases prior to *Thaddeus-X* have held that in order to state a viable retaliation claim in a civil rights action, a plaintiff need not prove that the defendant's actions amounted to a constitutional violation, but need only show that the defendant intended to retaliate against the  plaintiff for exercising a constitutional right and that the defendant's actions impermissibly infringed on the plaintiff's constitutional right.  *See Williams v. Kling*, 849 F. Supp. 1192 (E.D. Mich. 1994).  In circumstances where the alleged conduct does not state a constitutional violation absent retaliatory intent, a plaintiff needs to prove that the

claimed retaliation was a "substantial and motivating factor" in the defendant's conduct.  *Id.* at 1196 (E.D. Mich. 1994)(citing *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283 (1977)).

Antonelli fails to explain how he was adversely impacted by the defendant's actions or how he was the victim of alleged retaliation.  He sets forth only broad, vague and conclusory allegations that he was "harassed, intimidated and badgered" [Record No. 61, p. 11].  This inadequately pled claim will be dismissed.  Even assuming the harassment claims are true, they lack substance on the merits.  Allegations of mere verbal abuse and harassment do not rise to the level of a constitutional violation.  *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (*per curiam*); *Williams v. Bulthus*, 1999 WL 455427 (6th Cir. June 24, 1999); and *Collins v. Candy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff's idle threats to hang a prisoner did not give rise to a §1983 action).  The claim will be dismissed under Fed. R. Civ. P. 12(b)(6).

**rr.**

In Count 62, Antonelli alleges that Officer Newsome "retaliated" against him for filing grievances and assisting other inmates in filing grievances.  (TRT-MXR-2007-02666.) Though Antonelli filed an administrative tort claim on this matter, the BOP states that he withdrew the claim.

In his Complaint, Antonelli described the alleged retaliation as "harass[ment], intimidat[ion], humiliat[ion], degrad[ation] and embarrass[ment]."  [Record No. 2, p. 17.]  He again used the term "harass" in his response to the motion to dismiss.  [Record No. 61, p. 12.]

As such, he  has set forth only vague and conclusory allegations on this issue, failing to provide any specifics as to the manner in which the defendant retaliated against him.  Even taking his complaint at face value, the Court has explained that allegations of mere verbal abuse and harassment do not rise to the level of a constitutional violation.  *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987).  The claim will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**ss.**

In Count 48, Antonelli alleges that Defendant Rios did not remedy an incident report written against him, causing the BOP Appeals Administrator to send the appeal back to the Warden.  Antonelli, however, failed to administratively exhaust this claim, erroneously arguing that the prison staff's alleged failure to respond to his BP-8 excused him from further efforts to exhaust his administrative remedies [Record No. 65, p. 3].  The Court has explained that a lack of response to a BP-8 from the staff does not excuse further exhaustion with the warden, the BOP Regional office, and the BOP Central Office.  Further, as has been explained, there is no constitutional right to an effective grievance procedure.  *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Flowers v. Tate*, 925 F.2d 1463 (6th Cir. 1991); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986); *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).  This claim lacks merit, and it will be dismissed.

**tt**.

In Count 55, Antonelli alleges that Warden Rios is illegally holding him because the criminal statute Antonelli was convicted and sentenced under was improper.

(TRT-MXR-2007-06362.)  In response to his administrative tort claim, Antonelli was informed that he was held at USP-Big Sandy from June 20, 2006, through January 26, 2007, pursuant to a U.S. Parole Commission warrant for a parole violation.  Antonelli appeared at a parole hearing in May of 2007, and the USPC found he had violated his parole.  He was committed to the Attorney General for service of his parole violation term.

As the defendants correctly argued, Former Warden Rios had no authority to modify Antonelli's sentence.  That authority rested with Antonelli's sentencing court via a motion filed under 28 U.S.C. § 2255.  Thus, Antonelli has failed to state a claim on this issue.

**uu.**

In Count 56, Antonelli alleges that Joe Baines, Food Service Administrator, failed to keep the dishwasher at the proper temperature and that the food served was spoiled. (TRT-MXR-2007-04173.)  In response to his administrative tort claim, Antonelli was informed that the Food Service Department does not serve spoiled food.  The BOP explained that if food had been spoiled, several inmates would have become ill.  That did not occur.

Unless a person has experienced an actual injury, as opposed to a speculative claim of injury, the person is without standing to assert a civil rights claim.  *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471 (1982); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487 (6th Cir. 1995).  If a party does not have standing to bring an action under Article III of the Constitution, a court must issue an order of dismissal as it has no jurisdiction over the matter.  *Greater Cincinnati Coalition, et al. v. City of Cincinnati*, 56 F.3d 710, 715 (6th

Cir. 1995) (citing *DeBolt v. Espy*, 47 F.3d 777, 779 (6th Cir. 1995)).  Antonelli does not

allege that he was a victim of food poisoning, only that the conditions were ripe for food

poisoning to occur.  Because Antonelli has not established an actual injury as a result of the

dishwasher temperature, this claim will be dismissed with prejudice.

**vv.**

In Count 58, Antonelli alleges that Susan Walters, Supervisor of Education, denied his

request to allow the book entitled *Turner Diaries* into USP-Big Sandy.

(TRT-MXR-2008-00280.)  In response to his administrative tort claim, the BOP explained

that the book was rejected because it is inappropriate for a correctional setting.  *Turner

Diaries* is a 1978 novel written by the late William Luther Pierce, leader of the white

supremacist organization National Alliance, under the pseudonym "Andrew Macdonald."  It

depicts a violent revolution in the United States which leads to the overthrow of the federal

government and, ultimately, to the extermination of all Jews and non-whites.

The defendant asserts that Antonelli fails to allege if he was seeking the book for his

own use, in which case his claim would be evaluated under the analysis of *Turner v. Safely*,

482 U.S. 78 (1987), or if he was seeking to have USP-Big Sandy purchase the book from

government funds for the leisure library.  The defendant argues that it is inherently unfair to

be forced to defend a complaint when the nature of the claim asserted is unclear.  The Court

agrees.  Because Antonelli fails to allege whether he is challenging the procedures outlined at

28 C.F.R. § 540.70 or challenging the prison's decision not to purchase the book for the

leisure library, his claim on this issue is overly broad.  The Court is further convinced that if

57

Antonelli was lodging a claim under *Turner v. Safley*, the restriction on the book bore a

legitimate relationship to the administration's duty to maintain prison security. The book at

issue could be seen as having the potential to incite violence and unrest among the inmates.

And rigorous scrutiny is "not appropriate for consideration of regulations that are centrally

concerned with the maintenance of order and security within prisons." *Thornburgh v.*

*Abbott*, 490 U.S. 401, 409-10, 109 S. Ct. 1874 (1989). For these reasons, the Court will

dismiss this claim.

### ww.

In Count 59, Antonelli alleges that the Federal Bureau of Prison destroyed his

photographs. This claim must be dismissed as a matter of law. The FTCA constitutes a

limited waiver of the sovereign immunity enjoyed by the United States. The operative

jurisdictional provision is set forth in Title 28 U.S.C. § 1346(b)(1).[14] This provision permits

an action against the United States for wrongful acts committed by its employees during the

course of their employment, *Fitch v. United States*, 513 F.2d 1013 (6th Cir. 1975), so long as

the administrative procedures outlined in its provisions are satisfied. *See* 28 U.S.C. § 2675;

---

[14]

Title 28 U.S.C. § 1346(b)(1) states as follows:

... the district courts ... shall have exclusive jurisdiction of civil actions on claims
against the United States, for money damages ... or injury or loss of property, or
personal injury or death caused by the negligent or wrongful act or omission of
any employee of the Government while acting within the scope of his office or
employment, under circumstances where the United States, if a private person,
would be liable to the claimant in accordance with the law of the place where the
act or omission occurred.

58

28 U.S.C. § 2401.

While most claims of negligence may be asserted under the FTCA, there are exceptions.  Relevant to this case is the exception for "[a]ny claims arising in respect of the assessment or collection of any tax or customs duty, or the detention of any ... property by any officer of customs or excise or any other law enforcement officer."  28 U.S.C. § 2680(c).  While the phrase plainly applies to the activities of customs officers, the Supreme Court has recently held that the words "[a]ny claims arising in respect of ... the detention of any ... property by ... any other law enforcement officer" apply to a claim for lost property by a federal inmate.  *Ali v. Federal Bureau of Prisons*, 128 S.Ct. 831, 2008 WL 169359 (January 22, 2008).  Specifically, in *Ali*, the Supreme Court held that this language barred a federal prisoner's FTCA claim for personal property lost during his transfer from a Georgia federal prison to USP-Big Sandy.  *Id.*  In doing so, the Supreme Court noted that the word "detention" should be broadly interpreted.  *Id.* at 836 (citing *Kosak v. United States*, 465 U.S. 848, 854-59 (1984)).[15]  The Court's holding overruled established Sixth Circuit precedent holding that Section 2680 only applied to law enforcement officers performing customs or excise functions.  *Id.* at 835 (citing *Kurinsky v. United States*, 33 F.3d 594, 598 (6th Cir. 1994)).  Neither 28 U.S.C. § 2680(c) nor *Kosak* requires specific intent or knowledge on the part of federal law enforcement officers.  *Bramwell v. United States Bureau of Prisons*, 348

---

[15]

In *Kosak*, the Supreme Court broadly construed 28 U.S.C. § 2680(c) to include negligent conduct by government employees.  *Kosak* held that claims "arising in respect of ... the detention of any goods, merchandise, or other property" included those claims arising out of negligent handling or storage by federal officials.  *Kosak*, 465 U.S. at 854.

F.3d 804, 807 (9th Cir. 2003).

Antonelli's claim regarding lost photographs is a claim "in respect of ... the detention of any ... property by ... any other law enforcement officer." Under *Ali*, it falls under the exception set forth in § 2680, and is therefore not cognizable under the FTCA. Therefore, Antonelli's claim seeking compensation for loss of photographs will be dismissed with prejudice.

**xx.**

In Count 63, Antonelli alleges that Warden Rios failed to forward a Notice of Action form from USP-Big Sandy to the United States Parole Commission, thereby making his parole appeal untimely. Antonelli fails so show how Warden Rios had any involvement in the delay of the Notice of Action. Antonelli also fails to demonstrate that he was denied access to the court or that he was actually hindered in his ability to pursue a legal claim with the Parole Commission, as required for a successful access to the courts claim. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996). Accordingly, his claim will be dismissed.

**C.**

**1.**

Antonelli has filed over fifty (50) Counts under the section of his Complaint entitled "Tort Claims" [Record No. 2, pp. 18-23] and six (6) Counts under the section entitled "Other Torts" [*Id.*, pp. 23- 25]. Antonelli specifically states that for each of the fifty-three (53) *Bivens* claims asserted in his Complaint, he wishes to assert a "corresponding" tort claim against the United States, presumably under the theory of negligence under the FTCA. The

60

Court must dismiss on the merits any and all "corresponding" tort claims asserted in the Complaint [Record No. 2, pp. 18-23].

In his Complaint, Antonelli makes it clear that he considered the actions of the USP-Big Sandy staff to be intentional in nature, not negligent.  He alleges that the defendants engaged in "an ongoing and perpetual pattern of gross negligence and deliberate indifference to plaintiff's rights emanating from the gross incompetence of the USP BSY {sic} staff." [*See* Complaint, Record No. 2, p. 18].[16]  Antonelli continued to characterize the actions of the defendants as intentional in his response to the defendants' motion to dismiss.  For example, Antonelli stated that "[a]ll of the named defendants acted personally to deprive plaintiff of his constitutional rights, either by directly being involved or by being of full knowledge and failed to correct those inferior defendants . . . ." [Record No. 61, p. 1].

The plaintiff occasionally uses the term "gross negligence" to describe the acts of the prison officials.  This term causes his claims to fall squarely into the domain of an intentional

---

[16]

  *See*, *e.g.*, the following excerpts: Count 1: "The action/inaction. . . was **deliberate indifference** to plaintiff's serious medical needs, gross negligence and medical malpractice . . [R. 2, p. 5]; Count 2: "plaintiff was damaged due to this **inhumane** treatment of him" [*Id*.]; Count 3: "Hamilton and Hastings's inaction/actions were **deliberate and intentional and gross conduct**" [*Id*]; "Responsible for this **gross deprivation** directly is Susan Walters" [*Id*., p. 6]; Count 31:"Hastings . . . was grossly negligent and deliberately indifferent to our human rights. This was deliberate and intentional and wilful and wanton. . . .Others . . .**flagrantly and blatantly** deprived plaintiff of his eight amendment {sic} rights." [*Id*., p.13]; Count 32" Gourdouze . . maintained **wholly grossly, blatantly and flagrantly** incompetent security/staff at USP BSY and allowed all these **atrocities** . . .to occur." [*Id*] (Emphasis added by the Court).

tort under either the Fourth or Fifth Amendments.  In *Farmer v. Brennan*, 114 S. Ct. 1970, 1978 (1994), the Supreme Court explained that there is "little difference" between "gross negligence" and "recklessness as generally understood in the civil law." *Id*. at n. 4.  Sixth Circuit law also holds that a prison official's gross negligence or deliberate indifference to a prisoner's needs may constitute an Eighth Amendment violation.  *See Sherfield v. Matheny*, 820 F.2d 1225 (Table), 1987 WL 37762, at *4 (6th Cir. June 22, 1987); *Roberts v. City of Troy*, 773 F.2d 720, 724 (6th Cir. 1985) (citing *Stewart v. Love*, 696 F.2d 43, 44 (6th Cir. 1982) (prison assault case)) (*Nishiyama v. Dickson County*, 814 F.2d 277, 282-83 (6th Cir. 1987) (*en banc*) (grossly negligent or reckless supervision can form the basis for liability in a section 1983/Fourteenth Amendment action).[17]

 Federal Rule of Civil Procedure 8(f) states that "[a]ll pleadings shall be so construed as to do justice."  This rule directs courts to construe pleadings liberally within the standards of the notice-pleading regime mandated by the Federal Rules of Civil Procedure.  *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001).  As the Sixth Circuit has stated, "[T]he fundamental tenor of the Rules is one of liberality rather than technicality, and it creates an important context within which we decide cases under the modern Federal Rules of Civil Procedure." *Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000).  Therefore, the

---

[17] *See also Joseph v. Brierton*, 739 F.2d 1244, 1249-50 (7th Cir. 1984) (equating 'deliberate indifference' with 'willful neglect'); *Little v. Walker*, 552 F.2d 193, 197 n. 8 (7th Cir. 1977), *cert. denied*, 435 U.S. 932 (1978); *Redmond v. Baxley*, 475 F. Supp. 1111, 1118 (E.D. Mich. 1979) (noting that "deliberate indifference may involve taking risks, rather than intending results," and citing approvingly other district court opinions equating deliberate indifference with wantonness, recklessness, or gross negligence).

Rules require that a court not rely solely on labels in a complaint, but that it instead probe

deeper and examine the substance of the complaint. The Sixth Circuit has made clear that

"the label which a plaintiff applies to a pleading does not determine the nature of the cause of

action which he states." *United States v. Louisville & Nashville R. Co.*, 221 F.2d 698, 701

(6th Cir. 1955). Based on this authority, the Court determines that Antonelli asserted Eighth

Amendment claims when he alleged "gross negligence."

Having determined that Antonelli asserts constitutional torts in his original

complaint, the Court must determine if the FTCA is even applicable. In doing so, the Court

will assume that the acts about which Antonelli complains, the deliberate denial of medical

treatment and a host of other services, are true. Under the FTCA, the United States may be

held liable for negligent or wrongful acts by federal employees committed while acting

within the scope of their employment. Specifically, 28 U.S.C. § 1346(b) grants federal

district courts jurisdiction over a certain category of claims for which the United States has

waived its sovereign immunity.

In *Bivens*, the Supreme Court created a private right of action for damages against

federal officers who are alleged to have violated a citizen's constitutional rights. *See*

*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66, 122 S. Ct. 515, 519 (2001); *Bivens*,

403 U.S. 388, 91 S. Ct. 1999 (1971). *Bivens* involved Fourth Amendment rights, but its

principle was extended to the Eighth Amendment in *Carlson v. Green*, 446 U.S. 14, 100 S.

Ct. 1468 (1998). The *Bivens* doctrine was extended to promote a right of action against

individual prison officials when the only alternative was an FTCA claim against the United

63

States, which the Supreme Court believed was insufficient to deter unconstitutional acts by individuals. *Carlson*, 446 U.S. at 14; *Correctional Services Corp*, 534 U.S. at 67-68, 122 S. Ct. at 520.

In *Carlson*, the Supreme Court held that FTCA and *Bivens* actions are "complementary" rather than integrated causes of action. *See Carlson*, 446 U.S. at 20-21. In *Washington v. Drug Enforcement Admin*, 183 F.3d at 873-74, the Eighth Circuit interpreted *Carlson* to mean that a claimant is not permitted to bring a constitutional tort cause of action under the FTCA. The *Washington* holding instructs that while some acts of intentional wrongdoing can be brought under the FTCA, claims asserting *constitutional* tort claims cannot. The court stated that "victims of purposeful wrongdoing on the part of federal law enforcement officers can bring specified intentional tort claims under the FTCA and constitutional tort claims under *Bivens v. Six Unknown Agents*. . . *See Carlson v. Green*; *see also FDIC v. Meyer . . .*" (citations omitted). *Washington*,183 F.3d 868 at 873.[18]

---

[18]

The Eighth Circuit gives teeth to the argument that even under the framework of *Carlson v. Green*, claims alleging constitutional violations can only be asserted under *Bivens*, not the FTCA.

> "In fact, this conclusion is actually supported by the text of the 1974 amendment. Congress included an exclusion for intentional torts such as assault, battery, and abuse of process in the original version of the act. *See* Federal Tort Claims Act § 421 (1946). However, in 1974 Congress amended this section to provide that "investigative or law enforcement 874 officers" can be held liable for "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h). The amendment abrogated the government's sovereign immunity under the FTCA only with respect to those enumerated torts, not constitutional ones. *See id*.; *see also Primeaux v. United States*, 181 F.3d 876, 884-85 (8th Cir. 1999) (en banc) (Lay., J., dissenting). Therefore, constitutional tort claims are not cognizable under the FTCA.

In the instant proceeding, the Court has determined that, notwithstanding the occasional use of the word "negligent" in the original complaint, the plaintiff alleges the prison employees intentionally committed constitutional torts. The case law is clear that claims alleging *intentional* violations of one's constitutional rights must be asserted under *Bivens*, not the FTCA. *Carlson v. Green*, 446 U.S. at 20-21; *FDIC v. Meyer*, 510 U.S. 471, 487 (1994); *Washington*, 183 F.3d at 873-74. Therefore, the fifty-three (53) "corresponding" FTCA negligence claims set forth in Antonelli's original Complaint must be dismissed in their entirety.

**2.**

Antonelli's six other FTCA claims [*See* Record No. 2, pp. 23-24] must be dismissed as well. Antonelli asserts claims for damages relating to confiscated typewriter correction tape, lost or destroyed mail, and property damage to a DVD/CD. As previously discussed, the *Ali* case dictates that recovery for the loss, damage, or destruction of personal items is barred under 28 U.S.C. § 2680(c), one of the exceptions to the waiver of sovereign immunity in the FTCA.

Antonelli also claims that his inability to obtain an "Angel Tree X-mas present" for his son caused him to sustain a "personal injury." No physical contact is alleged to have occurred. Thus, the only personal injury connected with the event would have to be emotional injury. As discussed, the PLRA prohibits the award of damages for emotional

---

*Washington v. Drug Enforcement Admin*, 183 F.3d 868, 873 -874.

distress or emotional injury absent physical contact.  42 U.S.C. § 1997e.  The same reasoning

applies to the plaintiff's claim that he is entitled to damages because he was denied a belt by

the laundry staff, causing his pants to become un-secured and fall down, and to his claim that

the denial of a local parole hearing caused him personal injury.  Further, as discussed, an

inmate has no protected liberty interest in a parole hearing.  The denial of parole is not, and

cannot be, the basis of a personal injury claim.

### D.

Antonelli demanded injunctive relief in order to prevent the continuation of the

activities about which he complains.  Antonelli has been transferred twice since he filed this

action on October 19, 2007.  He is now confined in a federal prison located in Memphis,

Tennessee.  An inmate's transfer to another prison moots his request for injunctive relief.

*Lyons v. Azam*, 58 Fed. Appx. 85, 87 (6th Cir. 2003) ("[A] prisoner's claims for injunctive

relief become moot when the prisoner is no longer confined at the prison where the claim

allegedly arose.") (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)).  *See also Jones v.*

*Pancake*, 2007 WL 2407271, at *2 (W.D. Ky. August 20, 2007) (where prisoner had alleged

that prison officials had racially discriminated against him, prisoner's subsequent transfer to

another facility mooted his Fourteenth Amendment claims and demands for injunctive relief,

as the prisoner was "apparently no longer subject to racially discriminatory placement

practices. . .").[19]  Based on the foregoing case law, Antonelli's claims for injunctive relief are

---

[19]

Case law from other federal circuits supports this conclusion as well.  *See McAlpine v.*
*Thompson*, 187 F.3d 1213,1215 (10th Cir. 1999) (claims for injunctive relief are rendered
moot upon release from confinement or transfer to another facility); *Green v. Branson*, 108

66

now moot.

## E.

The Court takes judicial notice of the fact that this plaintiff has filed four other civil actions in this Court.[20]  While four cases are not necessarily the indicia of a frivolous litigator, the Court can consider the record, as now developed, in assessing whether Antonelli has filed this action in bad faith.

First, the defendants have already noted that Antonelli has been subject to the "Three Strikes" provision of 28 U.S.C. § 1915(g), having filed 159 suits in federal courts and 684 administrative remedy requests with the BOP, thirty-seven of which were lodged while he was confined in BOP facilities located in the Eastern District of Kentucky.  [*See* Defendants Memorandum, Record No. 48-2, pp. 1-3, and Kevin Walsinski Declaration, Record No. 48-4].  In the instant action, Antonelli avoided the "Three Strikes" rule only because he paid the $350.00 filing fee.

Second, it is now clear that Antonelli has asserted more than 130 claims in this action for the purposes of harassment and vexation.  His claims lacked either factual basis, legal substance, or both.  Antonelli admits in his Complaint that "some counts may not be cognizable if they were to be considered alone, but combined together the totality of the

---

F.3d 1296 (10th Cir. 1997) (same).

[20]

    *See Antonelli v. Rios*, 7:06-CV-00283-GFVT; *Antonelli v. FBP*, 0:98-CV-189-HRW; *Antonelli v. Crow*, 6:08-CV-261-GFVT; and *Antonelli v. Grondolsky*, 6:07-CV-236-DCR (dismissal upheld on appeal).

circumstances present a valid claim of violation of plaintiff's rights under Bivens and the Tort Claim Act."  [*See* Record No. 2, p. 4].  This is an admission that Antonelli intended to deluge the Court with numerous frivolous, unsubstantiated claims in hope of getting something "to stick," perhaps because he had paid $350.00 and wanted to get his money's worth.

In sum, Antonelli's litigation tactics prove him to be nothing more than a chronic complainer.  He has needlessly consumed the resources of this Court.  He has used the Court as a therapeutic outlet to vent his frustrations stemming from unavoidable inconveniences caused by his confinement, such as the fact that he was required to eat bologna and potato chips while in lock-down and the fact that he was denied carbon paper or a typewriter (which did not prevent him from filing this action or the 159 other lawsuits that he has filed).  The Court has already dismissed the claims against the BOP, the United States Parole Commission, the United States of America, and all of the individually named federal defendants in their official capacities.  [*See* Order, Record No. 12].  By this Order, the claims against all remaining defendants in their individual capacities will be dismissed with prejudice.  The Court finds that this entire action has been a bad faith filing, and the Court will consider proper sanctions and enter Orders accordingly.

### III.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that:

(1)      The "Motion to Dismiss and/or Summary Judgment" [Record No. 54] is

**GRANTED**.

(2)      All constitutional claims asserted by Plaintiff Michael Carmie Antonelli

against all of the individually named federal defendants in their *individual capacities* are

**DISMISSED with prejudice**.

(3)      This action [7:07-CV-219-GFVT] is **DISMISSED with prejudice**.

(4)      Judgment shall be entered contemporaneously with this Memorandum Opinion

and Order in favor of the named defendants herein.

(5)      The Court will consider proper sanctions and will enter Orders in accordance

with the finding that Plaintiff Antonelli has filed this action in bad faith.

This the 31st day of March, 2009.

Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**

69